IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION


| | | |
|---|---|---|
| JOHN ANTHONY YOUNG, #1527987 | § | |
| VS. | § | CIVIL ACTION NO. 4:12cv38 |
| DIRECTOR, TDCJ-CID | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner James Anthony Young, a prisoner confined at the Stiles Unit in Beaumont, Texas,

proceeding *pro se,* filed the above-styled and numbered petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254. The petition was referred to the undersigned United States Magistrate Judge

for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant

to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of

Duties to the United States Magistrate Judge.

## Background

Petitioner was charged with two counts of aggravated kidnapping, enhanced by two prior

felony convictions. A jury found both enhancement paragraphs to be true and found him guilty on

both counts of aggravated kidnapping. On August 22, 2008, the jury sentenced him to fifty-five

years' confinement for each count, to be served concurrently. On December 17, 2009, the Second

Court of Appeals affirmed Petitioner's conviction. *Young v. State*, No. 02-08-00312-CR (Tex.

App.–Fort Worth 2009, pet. ref'd). The Texas Court of Criminal Appeals (CCA) refused his

petitioner for discretionary review on September 15, 2010. *Young v. State*, PDR No. 0075-10. The CCA then denied his state writ of habeas corpus on September 28, 2011, without written order, based on the findings of the trial court without a hearing. *Ex parte Young*, Application No. 76,390-01.

In his § 2254 petition, Petitioner asserts he is entitled relief because:

1. He was denied effective assistance of counsel when counsel failed to:

   a. request a jury instruction on safe release; and

   b. object to the jury instruction on enhancement paragraphs because the order of prior convictions was improper; and

2. There was insufficient evidence to support the convictions.

The Government filed a Response, asserting that Petitioner's issues are without merit, to which Petitioner filed a Reply.

<u>Statement of Facts</u>

The Second Court of Appeals included an in-depth recitation of the facts of this case:

Carlton Adger testified that on the night of February 22, 2006, he and his girlfriend, Sharice Brodie, were driving northbound on I-35 on their way to Denton. Carlton was sleeping. Sharice woke him because two cars driving next to them looked as if they were about to wreck. One of the cars, a Suburban, was going fast and swerving; it collided with a Honda next to it and ran up against the median.[1] Carlton identified photographs of the Suburban offered by the State. Carlton had Sharice pull over so that they could check and see if anyone in the Suburban had been injured.

Sharice stayed in the car while Carlton started walking toward the Suburban. At that point, Carlton saw someone he later identified as appellant "come from around the [S]uburban and jog, then . . . slow[] down like a fast walk, . . . and approach[]" him. Carlton said appellant was in a big hurry, as if he were trying to get away from the

---

[1]The wreck occurred near the intersection of I-35 and the George Bush tollway in Carrollton.

scene.  Appellant seemed to be in a state of shock, and he told Carlton to "[g]et back in the car."[2]  As appellant said this, he was holding his hand up and had something covering it; he waved his hand as if he had a gun.  Carlton could tell "it wasn't his finger because it was something that stopped short in [a] towel or a shirt or something . . . and made it seem as if he had a weapon."  The towel was stiff, stuck out, and didn't move.  Carlton believed appellant had a gun, but he did not actually see a gun.

After Carlton realized that appellant had what he thought was a gun, Carlton became afraid.  If appellant had concealed a gun under the towel, the barrel would have been pointing at Carlton.  Carlton got back in the passenger side front seat, and appellant got into the passenger side back seat.  Carlton told Sharice to drive, and they drove for about five to seven minutes.  She drove to the La Quinta in Lewisville, off Corporate Drive.  Carlton had suggested to appellant that they could let him out there just to get him out of the car.  Appellant said, "[F]ine.  Okay."[3]  Then he darted out of the car and said thank you.  According to Carlton, appellant "pretty much was trying to, basically, get away."

As they drove, appellant kept saying, "[M]y partner is going to be mad at me, I done wrecked his car."  Appellant smelled strongly of alcohol.  Carlton realized, based on appellant's level of agitation, that he must have done something else wrong other than a hit and run.  It made him scared.

Carlton identified State's exhibits 4 and 5 as the sports jersey and black pants appellant was wearing that night.

Sharice testified that around 11:00 on February 22, 2006, she was driving on I-35 near the intersection with the George Bush turnpike in Carrollton, when she saw an SUV behind her car; it came up on her car fast, swerved into the next lane, and hit the car in front of her.  She identified the Suburban shown in State's exhibits thirty-three through thirty-five as the SUV.  Sharice said that when the cars collided, the Suburban went to the left and the car went to the right.  She pulled over to the left-side shoulder of the highway.

---

[2]It appears from Carlton's testimony that appellant said this twice, but it is unclear in exactly what sequence appellant told Carlton to get back in the car.  However, Carlton's testimony makes it clear that he felt he had no choice but to get back in the car because he thought appellant was threatening him with a gun.

[3]Carlton had the impression that appellant did not have a particular destination in mind but rather just wanted to be away from the scene.

When Carlton got out of the car,[4] Sharice saw him walking toward the back; she could hear him asking the SUV driver if he was okay. She did not see anything unusual until Carlton got into the car, followed by appellant. Appellant had his hand wrapped in "a towel or some kind of shirt" and he was carrying a Crown Royal bag. She could not say what was underneath, but she thought appellant had a gun and she was scared.

According to Sharice, appellant asked her and Carlton to hurry up and drop him off at La Quinta because he had a friend that lived in an apartment in the area.[5] He seemed nervous because he had wrecked the Suburban, which he had borrowed from a friend. He said he should not have fallen asleep at the wheel. He seemed to be in a hurry and smelled of liquor. It took about five to seven minutes for them to get to the La Quinta.

According to Sharice, the parking lot at the La Quinta was dark and no one was around; she was afraid because it was late and she was pregnant at the time.[6] She said although there was light shining on the hotel itself, there was not any in the parking lot where they were parked. When appellant got out, he was polite and hurried up and around the side of the building.

Gary Fernandez, a detective with the City of Carrollton police, investigated the offense against Carlton and Sharice. He obtained and executed a search warrant for the Suburban. He found evidence linking appellant to a robbery that had occurred at a Sonic in nearby Coppell immediately before the accident; specifically, he found a cell phone under the driver's seat that the robber had taken from the cook at the Sonic.[7] According to Detective Fernandez, there was no fingerprint evidence; he did not know if that was because the Suburban had not been dusted for fingerprints or if no prints were found. Detective Fernandez also confirmed that if Sharice had driven from the wreck to Lewisville, she would have crossed the county line from Dallas to

---

[4]Sharice confirmed that she had awakened him right before the cars collided.

[5]When asked if Carlton told her when he got in the car, "Drive, let's go to La Quinta," Sharice said yes.

[6]In contrast, Carlton had testified that because the La Quinta was right off the main road, "if anything would have happened right there, . . . everybody would see."

[7]Detective Fernandez actually called the cell phone number that had been given to him by the detective investigating the Sonic robbery, and the recovered cell phone rang.

Denton County.

Detective Scott Peters, a Coppell police officer, testified that he investigated the Sonic robbery and participated in the investigation of the offense against Carlton and Sharice. He obtained a search warrant for appellant's residence and also was present when police searched appellant's Mitsubishi. Lewisville, Carrollton, and Coppell police all worked together in handling the investigation. Detective Peters identified State's exhibits thirty-eight through forty-three as photographs of the Mitsubishi and items found in it: among them, a towel and a shoe box with a black bag containing money inside.

Detective Peters identified State's exhibit forty-four as a shoebox found in appellant's apartment; a BB gun was found inside. According to Detective Peters, the BB gun was similar to a .45 or 9 millimeter semiautomatic weapon in size, shape, and color. He testified that such a weapon is capable of causing death or serious bodily injury, depending on where the person was shot.

Detective Peters also testified that the jersey, pants, stocking cap, and hat police found in appellant's apartment matched those worn by the man in the surveillance video from the Sonic.

Detective Robert Feagins, a police officer for the City of Lewisville, testified that on February 22, 2006, he learned of a robbery at a Sonic in Coppell[8] with a gold Suburban involved. Based on the information he received, he went to a location in Lewisville where he met with the vehicle owner, Roosevelt Sanders, who admitted to having driven the Suburban that day.

Detective Feagins also spoke with Carollton police officers, who were talking to Carlton and Sharice; he had the officers and Carlton and Sharice come to a parking lot outside Sanders's workplace to see if Carlton and Sharice could identify Sanders as the person who had been driving the Suburban. They said he was not the same man. Detective Feagins then showed them "photo lineups [he] happened to have with [him] of an additional suspect."[9] He spread these photo arrays out on the trunk. One of the photographs was of appellant; Carlton and Sharice identified him as the

---

[8]The Sonic is located in Dallas County.

[9]The lineup, which was admitted into evidence, consists of six driver's license photographs, each around two inches by two inches. Detective Feagins testified that he had developed appellant as a suspect in two other incidents about two weeks earlier, which is why he had the photo array with him.

driver of the Suburban.[10]  This identification occurred approximately thirty minutes after the wreck.

Carlton and Sharice told Detective Feagins that they had been driving northbound on l-35 and that they had stopped for a wreck in front of them to see if anyone needed assistance.  Appellant approached them with a towel over his hand as if he were trying to hide something under it and demanded that they give him a ride to Lewisville.  Because they thought he had a handgun under the towel, and therefore felt threatened, they drove him to the La Quinta on I-35 in Lewisville, which was probably two miles away from where they stopped due to the wreck.  In doing so, they crossed the boundary from Dallas County into Denton County, and most of the travel time occurred in Denton County.

Detective Feagins contacted a supervisor with the information that Carlton and Sharice had identified appellant, and Lewisville police officers later took him into custody.  Detective Feagins interviewed appellant at the Lewisville Police Department.  A recording of the interview was admitted into evidence at trial.

Appellant initially denied having been anywhere other than his apartment on February 22, 2006.  However, he later admitted that Sanders had let him drive the Suburban and that he had had a wreck in it.  He denied having a gun with him but admitted that he had asked Carlton and Sharice to "drop him off at the house" and that they drove him to the La Quinta.

Detective Feagins showed appellant the same photo array he showed the complainants, and appellant picked number 5 as the picture of himself, which is the photo Carlton and Sharice identified.  The Lewisville police also searched appellant's vehicle, a green Mitsubishi, for evidence; they found money related to the Sonic robbery and a towel.  The cash was in twenties and was banded with yellow stickies and thin white bands with a blue stripe.  The detective testified that Sonic, not the police department, put the bands and stickies on the money.  Detective Feagins testified that the towel fit the description given him by the complainants.  It was also large enough to cover a handgun if someone were holding one.

According to Detective Feagins, he was familiar with the route from the Sonic to the crash scene and that if a person were driving fast, it would take about eight minutes to make that drive.

On cross-examination, Detective Feagins admitted that appellant and Sanders were

---

[10]According to Detective Feagins, they identified the photo of appellant simultaneously; he did not separate them for purposes of identifying their assailant.

similar looking and that Sanders had initially lied and said the gold Suburban had been stolen. Nevertheless, he did not attempt to confirm Sanders's statements about his whereabouts during the time of the Sonic robbery.[11] Detective Feagins also affirmed that the Suburban was impounded by Carrollton police and that he did not order it to be searched to look for evidence in the charged kidnappings. But he did find out from the Carrollton investigator that a telephone had been found in the Suburban.

Detective Feagins acknowledged on redirect that there was no indication from any of the witnesses to the Sonic robbery that a second man was involved. In addition, he focused on appellant instead of Sanders in the investigation because he was investigating appellant in two prior incidents, which he suspected appellant of being involved in, partly because the two locations were located close to appellant's apartment and were easily accessible to appellant's apartment through a hole in the fence. Additionally, the manager of the apartment complex gave Detective Feagins information that led him to believe that appellant, not Sanders, was the suspect in the Sonic robbery. He believed appellant walked, rather than drove, during the prior incidents. Finally, appellant's and Sanders's descriptions of appellant's borrowing the gold Suburban corresponded. Detective Feagins did not think Sanders would have had time to commit the robbery on his own, switch cars with appellant, and then appellant be in the wreck "minutes later."[12]

Detective Feagins confirmed that Carlton and Sharice did not say that they ever saw a gun in appellant's hand.

Several witnesses testified to appellant's involvement in the Sonic robbery; he does not challenge the legal and factual sufficiency of that evidence on appeal.

*Young*, Slip Op. at *1-12.

### Federal Habeas Corpus Relief

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas

---

[11]Sanders apparently told Detective Feagins that he had been working.

[12]Sanders's place of employment was about three miles from where the wreck occurred and about eight or nine miles from the Sonic.

corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1517-18, 146 L. Ed.2d 389 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under §

2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. 1522-23. Rather, that application must be objectively unreasonable. *Id.* 529 U.S. at 409, 120 S. Ct. at 1521. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Beel v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed.2d 914 (2002); *see Williams*, 529 U.S. at 404, 120 S. Ct. at 1519. A state application that is denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991); (2) seeks retroactive application of a new rule of law

to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993).

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Harrington v. Richter,* 562 U.S. 86*,* 131 S. Ct. 770, 788, 178 L. Ed.2d 624 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* 562 U.S. at 101-02, 131 S. Ct. at 786. Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this court's precedents. It goes no farther." *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.*; *see also Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 98-99, 131 S. Ct. at

784.

AEDPA also states that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254( e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001). This presumption is especially strong where, as in this case, the trial judge and the state habeas judge are the same. *Miller-El v. Johnson*, 261 F.3d 445, 449, 454 (5th Cir. 2001) (citing *Clark v. Johnson*, 202 F.3d 760, 764, 766 (5th Cir. 2000)).

Further, the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court, except for the narrow exceptions contained in § 2254(e)(2). Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, " it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would not be helpful to a habeas petitioner. 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed.2d 557 (2011). If a habeas petitioner failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). Failing to meet this standard of diligence will bar a federal evidentiary hearing in the absence of a convincing claim of

actual innocence that can only be established by newly discovered evidence. *Williams v. Taylor*, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490, 146 L. Ed.2d 435 (2000). Even if a petitioner can meet the foregoing standard, it is within this court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits. *Clark v. Johnson*, 227 F.3d 273, 284-85 (5th Cir. 2000).

Ineffective Assistance of Counsel at Trial

Petitioner claims that he is entitled to habeas relief because his trial counsel was ineffective.

Legal Standard

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.*, 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner must "affirmatively prove,"

not just allege, prejudice. *Id*., 466 U.S. at 693, 104 S. Ct. at 2067.   If he fails to prove the prejudice

component, the court need not address the question of counsel's performance.  *Id*., 466 U.S. at 697,

104 S. Ct. 2052.

<u>Failure to Request Jury Instruction on Safe Release</u>

Petitioner complains that counsel was ineffective for failing to request a jury instruction

concerning safe release.  Aggravated kidnapping is a first degree felony with a punishment range of

up to life confinement.   However, if at the punishment phase, the defendant proves that he

voluntarily released the victim(s) in a safe place, the offense is a felony of the second degree, which

has a maximum possible term of confinement of twenty years.  If, under the particular facts of the

case, it would be considered error for the trial court to refuse a request for such an instruction,

defense counsel's failure to request it may render his assistance ineffective.  *See Vasquez v. State*,

830 S.W.2d 948, 951 (Tex. Crim. App. 1992).

The state habeas court made findings of fact and conclusions of law (citations omitted):

Finding 3.       Applicant's first ground argues that trial counsel was ineffective for failing to request a jury instruction regarding the safe release of his victims.  This issue was raised and rejected on direct appeal.

Conclusion 1.  Because Applicant's first ground raises ineffective assistance of counsel for failure to request a jury instruction on the safe release of his victims, and this issue was raised and rejected on direct appeal, this claim is not cognizable in an application for writ of habeas corpus.  This issue should be dismissed.

*Ex Parte Young*, Application No. 76,390-01, at 27-28.  Petitioner has failed to show that  the state

court proceedings resulted in   a decision that was contrary to,  or involved an  unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States, or that the decision was based on an unreasonable determination of the facts in light of the

13

evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25.

A review of the record shows that trial counsel was following a trial strategy. To request an instruction on voluntary safe release, a defendant must admit that there was a victim. Thus, he must necessarily admit that there was a kidnapping. *See* Tex. Penal Code Ann. § 20.04(d) (West 2003). It appears that rial counsel's strategy was to convince the jury that someone else committed the robbery and kidnapping. It is conceivable that he did not request a jury instruction because that would involve admitting what he so strenuously disputed during the guilt phase. Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Trial counsel's strategic choices are virtually unchallengeable after a thorough investigation into the law and relevant facts are made. *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066. On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Id.*, 466 U.S. at 689, 104 S. Ct. 2065.

Petitioner raised the same issue on appeal. The appellate court noted (citations omitted):

[Petitioner] also claims that his counsel was ineffective for failing to request a safe release instruction. However, [Petitioner] cannot show that but for this failure, the outcome would have been different. Here, the jury found both of the enhancement paragraphs true. Because the enhanced punishment range is the same for a second degree felony enhanced by two prior felony convictions as it is for a first degree felony enhanced by two prior felony convictions, [Petitioner] would have been subject to the same punishment range even if his counsel had requested a safe release instruction and proved the defense to the jury by a preponderance of the evidence.

*Young*, Slip Op. at *22. Petitioner has failed to overcome the presumption that counsel was using trial strategy, that counsel performed deficiently, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 689, 694, 104 S. Ct. at 2066, 2068. Moreover, Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 786, 131 S. Ct. at 786.

Failure to Object to the Jury Instruction

Petitioner next complains that counsel was ineffective for failing to object to the jury instruction on enhancement paragraphs because the order of the prior convictions was improper. Petitioner raised this issue in his state habeas proceedings and the following findings of fact and conclusions of law were made (citations omitted):

Finding 4.     Applicant's second ground raises the issue of ineffective assistance of trial counsel for failure to object to the jury instruction on enhancement paragraphs because the order of prior convictions was improperly alleged.

Finding 5.     The State conceded on direct appeal, in response to Applicant's claim of trial court error, that the charge erroneously instructed the jury to assess punishment in the range of twenty-five to ninety-nine years or life if it found the 1993 Dallas County conviction occurred "prior to" instead of after the 1991 Tarrant County conviction.

Finding 6.     The Second Court of Appeals held that the error in the charge was obvious but held that Applicant was not egregiously harmed by the error. Likewise, Applicant has failed to show that trial counsel's errors were so serious that

Applicant was deprived of a fair trial, i.e., a trial with a reliable result.

Conclusion 2. Although the error in the order of enhancements was obvious, the Second Court of Appeals held that Applicant was not egregiously harmed by the error. Likewise, Applicant has failed to show that trial counsel's errors were so serious that Applicant was deprived of a fair trial, i.e., a trial with a reliable result. An appellant must show that there is a reasonable probability that the result of the proceeding would have been different absent counsel's unprofessional errors, and he has failed to do so in this case. This issue should be denied.

*Ex Parte Young*, Application No. 76,390-01, at 28-29.

A review of the record shows that the jury found that both enhancement offenses were true. Even if the jury had found only one enhancement offense to be true, the effect would have been to reduce the minimum punishment range from twenty-five years down to fifteen years. Since the jury assessed punishment in each count at fifty-five years, it presumably was not considering the sentencing range between fifteen to twenty-five years. Petitioner has presented no factual allegations showing that his counsel's arguably deficient performance resulted in an adverse effect. When counsel is claimed to be ineffective at the punishment phase of trial, "the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been 'significantly less harsh,' taking into account 'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008), *cert. denied*, 558 U.S. 847, 130 S. Ct. 367, 175 L. Ed.2d 76 (2009) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88-89 and *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)) (internal citations omitted).

Petitioner was sentenced to fifty-five years' confinement for each count. He has not shown

16

a significant probability that, but for counsel's alleged errors, he would have received a significantly less harsh sentence within the fifteen to twenty-five year range. *Spriggs*, 993 F.2d at 88. Thus, the state court's rejection of this claim was reasonable.

Petitioner has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. Moreover, Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 786, 131 S. Ct. at 786.

Insufficient Evidence

Petitioner claims that the evidence was insufficient to support his conviction of aggravated kidnapping. It is well-settled that sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus in Texas. *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986). The Fifth Circuit has also recognized the same state procedural bar. *West v. Johnson*, 92 F.3d 1385, 1398, n. 18 (5th Cir. 1996) (sufficiency of the evidence may be raised on direct appeal, but not in a habeas corpus proceeding). Thus, the claim is procedurally barred unless Petitioner has demonstrated cause and prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565. Petitioner has failed to allege or demonstrate cause and prejudice or that he is actually

innocent of the crime. Consequently, this claim is procedurally barred from review.

Even if this issue was not barred, the appellate court provided an in-depth recitation of the facts of this case, and found the evidence to be legally and factually sufficient:

> Legal Sufficiency. We conclude and hold that the evidence is legally sufficient to support appellant's conviction of aggravated kidnapping of both Sharice and Carlton. The jury could have reasonably inferred that appellant had used the BB gun found in his apartment during the Sonic robbery, that he still had the BB gun with him after the wreck, and that he put a towel over it, using it to intimidate Carlton and Sharice by threatening to use deadly force. Carlton testified that he thought appellant had a gun, and there was testimony that a BB gun can be a deadly weapon, depending on proximity and location when it is fired. *See Adame v. State*, 69 S.W.3d 581, 581–82 (Tex. Crim. App. 2002); *In re R.D.*, No. 08-07-00100-CV, 2009 WL 638260, at *3 (Tex. App.—El Paso Mar. 12, 2009, pet. filed). Carlton testified that appellant did not ask, but rather told, him to "Go" and "Get in the car," all the while pointing something at him that looked like a concealed gun. That appellant did not point whatever object he was concealing at Sharice is not relevant; his pointing the item at Carlton was an attempt to influence Sharice's actions by threatening deadly force against Carlton because they were traveling together. *See Jenkins v. State*, 248 S.W.3d 291, 293–94 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Accordingly, based on the appropriate standard of review, we hold that the evidence is legally sufficient to sustain the verdict as to both counts. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
>
> Factual Sufficiency. For the same reasons, we conclude and hold that, even considered in a neutral light, the evidence is not so weak that the jury's determination is clearly wrong and manifestly unjust. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006). Based on the testimony of Carlton and Sharice, the physical evidence recovered by the police, and the testimony linking appellant to the Sonic robbery, the jury's verdict was based on permissible, reasonable inferences. We overrule appellant's eighth point.

*Young*, Slip Op. at *11-13. As shown, the appellate court considered the sufficiency of the evidence, and found it to be sufficient. Petitioner's claim that the evidence is insufficient to support his conviction is simply a disagreement with the fact-finder's resolution of conflicts in the evidence, and

as such, is foreclosed by settled principles of appellate review.  *See United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999) (in reviewing sufficiency of the evidence, a court "must accept credibility choices that support the jury's verdict, and . . . may not reweigh the evidence."). Petitioner has not shown that the state court proceedings resulted in  a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *Williams,* 529 U.S. at 402-03, 120 S. Ct. at 1517-18;  *Childress*, 103 F.3d at 1224-25.   He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 786, 131 S. Ct. at 786.

## Conclusion

Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary.  *Valdez*, 274 F.3d at 947.  He has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.   He also has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.  *Id*., 466 U.S. at 694, 104 S. Ct. at 2068. Finally, Petitioner has not shown that the state court proceedings resulted in  a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18;  *Childress*, 103 F.3d at 1224-25.  He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 786, 131 S. Ct.

at 786.  Accordingly, his petition should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed.2d 542 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

20

correct in its procedural ruling." *Slack*, 529 U.S. at 484.

It is respectfully recommended that reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 134, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the Court find that the Petitioner is not entitled to a certificate of appealability.

## Recommendation

It is therefore recommended that the petition be denied and dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other*

*grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 27th day of February, 2015.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE